**Chester C. CLIFT, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 21541.**

United States Court of Appeals
Fifth Circuit.

Aug. 17, 1965.

John S. Stephens, Coushatta, La., for appellant.

E. V. Boagni, Charles E. Welsh, Asst. U. S. Attys., Shreveport, La., Edward L. Shaheen, U. S. Atty., for appellee.

Before HUTCHESON, BROWN and FRIENDLY,* Circuit Judges.

PER CURIAM.

The Government instituted this libel action, pursuant to the provisions of 26 U.S.C. § 7302, seeking the forfeiture of six hundred 100-pound bags of sugar on the grounds that it was intended for use in fraud of the internal revenue laws, namely in an illicit distillery. Appellant, from whom the sugar was seized, intervened, claiming that it was owned by him and was not subject to forfeiture. The sugar in question was sold at auction to prevent its deterioration in storage, so the present controversy is over the proceeds of that sale.

The district court found that Clift entered an agreement by which he was to sell three hundred 100-pound bags of refined table sugar per week. Clift, a self-styled "wheeler and dealer" who operated a small country store on his father's plantation in Louisiana, testified that he ordered 300 bags of Market Basket brand sugar to fill the first week's order, without inquiring how the sugar was to be used. He later speculated that it would have been reasonable to expect that this large quantity of sugar might be used to sweeten feed in a cattle-feeding operation, although he admitted that molasses was the normal sweetener and that he had never heard of using refined table sugar for such a purpose.

On March 7, 1962, the first shipment of sugar was received by Clift who says he delivered it to a stranger the next day. It was loaded into the stranger's truck, which bore Mississippi license plates, at Clift's plantation. According to Clift, this stranger, who remains unidentified, paid him $3000 in cash, which he admitted aroused his suspicions. On March 18, a large illicit distillery near Poplarville, Mississippi, was raided. At the still were one hundred and twenty 100-pound bags of Market Basket brand sugar and about the same number of empty bags. Each bag contained stencil numbers 8–2, 17–3, or 22–2. The Government was unable to trace the movement of all of the bags bearing these numbers from the manufacturer to all ultimate buyers to show that those found at the still were the ones purchased by Clift and sold to the stranger, but from such tracing as was possible the district court concluded:

> "Nevertheless, it has been established that there was a good chance that some, and probably all, of the sugar Clift purchased bore stencil numbers 8–2, 17–3, or 22–2. When we add to this the highly suspicious circumstances under which Clift disposed of 30,000 pounds of sugar to a stranger in a truck bearing Mississippi license plates, the circumstantial evidence strongly supports the reasonable inference that the sugar was the same that was seized later at the Mississippi still."

The sugar which is the subject of this proceeding was admittedly purchased by Clift for sale to the same man who bought the earlier shipment. The stranger failed to pick up the second shipment. When an agent of the Alcohol and Tobacco Tax Unit questioned Clift, he vol-

---

* Of the Second Circuit, sitting by designation.

untarily disclosed that he had six hundred sacks of sugar stored on his plantation. He told the agent about a 40-year-old man, wearing a business suit, approaching him in a downtown cafeteria in Shreveport and, after discussing the feed business, asking him to supply three hundred bags of sugar a week. At the trial Clift admitted that this explanation he gave the agent was a lie.

The district court, refusing to credit much of Clift's testimony and that of the man who arranged for the sale to the stranger, concluded that,

> "the only inference reasonably to be drawn from the established facts is that Clift is bound to have known that the sugar seized, and the huge amounts to be handled in the future —15,600 sacks, or 1,560,000 pounds per year—were going to an illegal distillery or distilleries, and that he intended to supply sugar for that purpose because he felt he could make a substantial profit by doing so."

Appellant contends here that the district court erred in holding that the Government had proved its case. As correctly stated by the district court, the Government's burden is to prove the cause of the forfeiture by a preponderance of the evidence. Patenotte v. United States, 266 F.2d 647 (5th Cir. 1959). All the Government must show is that Clift intended the sugar for use in violation of the internal revenue laws. Since such forfeiture cases are governed by the Rules of Civil Procedure, the district court's findings of fact will not be set aside unless clearly erroneous. Utley Wholesale Co. v. United States, 308 F.2d 157 (5th Cir. 1962).

We are of the firm conviction that the district court committed no error in its disposition of the case and that its findings and conclusions are fully supported by the facts developed in the record. Accordingly, the judgment of the district court must be, and is hereby affirmed.