**UNITED STATES of America, Plaintiff-Appellee,**

v.

**ONE 1965 BUICK, etc. et al., Defendants, Wilbur Dean and Delores Dean, Claimants-Appellants.**

**No. 17559.**

United States Court of Appeals Sixth Circuit.

April 17, 1968.

James R. Willis, Cleveland, Ohio, for appellants; Louis Stokes, Elmer J. Whiting, Jr., Cleveland, Ohio, on brief.

James L. Oakar, Asst. U. S. Atty., Cleveland, Ohio, for appellee; Merle M. McCurdy, U. S. Atty., Cleveland, Ohio, on brief.

Before WEICK, Chief Judge, and EDWARDS and McCREE, Circuit Judges.

WEICK, Chief Judge.

This appeal involves questions arising out of the forfeiture of property used in the operation of a numbers business, in violation of the Internal Revenue laws.

The United States filed a libel of information in the District Court to condemn the property which consisted of $305,633.25 in cash, a package containing an unknown amount of currency, three Buick automobiles, and three adding machines.

The property had been seized by Special Agents of the Internal Revenue Service in a search of the residence of appellants, Wilbur and Delores Dean, pursuant to the authority of search warrants which authorized the search of the residence and four automobiles.

The libel alleged that the Deans and other persons engaged in and carried on the business of accepting wagers without having first paid the special oc-

cupational tax imposed on such business, and without registering the business as required by law [1]; that while so engaged said property was used and was intended for use in violation of the Internal Revenue laws; and that by reason thereof, said property became and is the property of the United States under the provisions of Section 7302 of Title 26, U.S.C.

Appellants filed answers, denying the material allegations of the libel. They also filed a claim to the property. Wilbur Dean filed a motion to suppress, the ground of the motion to suppress being that the search and seizure were illegal, in violation of his Fourth and Fifth Amendment rights.

Pursuant to a stipulation of the parties, the motion to suppress and the trial of the libel were heard together. The trial lasted eight days, at the conclusion of which the District Judge delivered his opinion, which is contained in eleven pages of the printed record. He adopted findings of fact and conclusions of law. He found that the allegations contained in the libel were sustained by the evidence, and ordered the property condemned by decree of forfeiture and turned over to the United States. He denied the motion to suppress.

It is contended on appeal that the federal wagering tax statutes which formed the basis for issuance of the search warrants and seizure of the property sought to be forfeited, are unconstitutional.

An analysis of this claim must begin with the forfeiture statute itself. 26 U.S.C. § 7302 provides in part:

"It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws * * * and no

property rights shall exist in any such property."

■ The primary purpose of the statute is the protection of the revenue through the effective enforcement of the revenue laws. Florida Dealers & Growers Bank v. United States, 279 F.2d 673, 676 (5th Cir. 1960); United States v. One 1950 Ford Half-Ton Pickup Auto Truck, etc., 195 F.2d 857, 859 (6th Cir. 1952); United States v. Windle, 158 F.2d 196, 199 (8th Cir. 1946). A reading of the language of the statute, in the light of the purpose for its existence, leads to the conclusion that it outlaws any property used or intended for use in violating the Internal Revenue laws and sanctions forfeiture thereof. However, if the wagering tax statutes are unconstitutional, as the appellants insist, then there would be no revenue law violation upon which to predicate the forfeiture.

When the case was tried in the District Court it was governed by two decisions of the Supreme Court, which upheld the constitutionality of the wagering statutes here involved. Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955) and United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953). Shortly before the appeal was argued, the Supreme Court decided Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), in which convictions for violating the wagering statutes were set aside because they were in violation of the accused's Fifth Amendment privilege against self-incrimination.

Appellants rely on these decisions and contend that since they cannot be con-

---

1. The applicable statutory provisions are as follows:
26 U.S.C. § 4411 provides in pertinent part:
    "There shall be imposed a special tax of $50 per year to be paid by each person who * * * is engaged in receiving wagers * * *"
26 U.S.C. § 4412 provides in part:
    "Each person required to pay a special tax under this subchapter shall register with the official in charge of the internal revenue district— * * * *"
26 U.S.C. § 4901 provides in pertinent part:
    "No person shall be engaged in or carry on any trade or business subject to the tax imposed by section 4411 * * * until he has paid the special tax therefor."

victed on a criminal charge for violation of the wagering statutes if they assert their privilege against self-incrimination, their property ought not be be subject to forfeiture for the same violation. In our judgment this does not follow.

■ The mere fact that an exclusionary rule of evidence may prevent a conviction for the criminal offense of violating the Internal Revenue laws, does not expunge civil liability for payment of the tax.

There can be no question but that Congress has power to tax unlawful activities. The fact that a business is unlawful does not exempt it from payment of taxes. United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927).

The Supreme Court in *Marchetti* did not hold that the wagering tax statutes as such were unconstitutional. The Court endeavored to make crystal clear that Congress had the constitutional power to enact such legislation. In *Marchetti*, the Court said:

"The Court has repeatedly indicated that the unlawfulness of an activity does not prevent its taxation, and nothing that follows is intended to limit or diminish the vitality of those cases."

In *Marchetti* the Court further said:

"We do not, as we have said, doubt Congress' power to tax activities which are, wholly or in part, unlawful.

" * * * Accordingly, nothing we do today will prevent either the taxation or the regulation by Congress of activities otherwise made unlawful by state or federal statutes.

" * * * We emphasize that we *do* not hold that these wagering tax provisions are as such constitutionally impermissible; we hold only that those who properly assert the constitutional privilege as to these provisions may not be criminally punished for failure to comply with their requirements. If, in different circumstances, a taxpayer is not confronted by substantial hazards of self-incrimination, or if he is otherwise *outside the privilege's* protection, nothing we decide today would shield him from the various penalties prescribed by the wagering tax statutes."

Finally, appellants' contention is explicitly answered by the Supreme Court in *Grosso,* where the Court stated in footnote 7:

"Section 4411 provides that the occupational tax must be paid 'by each person who is liable for tax under section 4401' and by each person who receives wagers for one liable under § 4401. It might therefore be argued that since petitioner is entitled to claim the constitutional privilege in defense to a prosecution for willful failure to pay the excise tax, he is thereby freed from liability for the occupational tax. We cannot accept such an argument. We do not hold today either that the excise tax is as such constitutionally impermissible, or that a proper claim of privilege extinguishes liability for taxation; we hold only that such a claim of privilege precludes a criminal conviction premised on failure to pay the tax."

The second ground for reversal urged by appellants is that there was not probable cause for issuance of the search warrants. Appellants argue further that even if on their face the warrants were sufficient, still they should have been allowed to show that in fact what the Commissioner did was to accept the conclusions of affiants, rather than arrive at an independent judgment.

Probable cause was established by supporting affidavits of five persons, four of whom were agents with the Intelligence Division of Internal Revenue Service, and the fifth person was a special employee working in an undercover capacity with the Service. The investigation which led to the issuance of the war-

rants began in October, 1964, and continued into April, 1965.

It is unnecessary to enumerate all of the facts in the affidavits which comprise twenty-two pages in the printed appendix. In substance, the affidavits disclose the following: During the investigation, special employee James Wilson placed numerous bets at Dean's House of Jazz, a record shop owned by the appellants, located at 8508 Hough Avenue in Cleveland, Ohio. These bets were placed with employees of the establishment, as well as with Mrs. Dean. On these and other occasions Wilson saw Mrs. Dean taking bets from other customers. He also observed other persons come into the shop and deliver quantities of bet slips and money to Mrs. Dean. Wilson also witnessed Mrs. Dean total bet slips, count money, and leave the shop with large envelopes containing bet slips and money. Wilson was advised by employees of the record shop that if he won a bet he could collect from Mr. Dean in the evening at the record shop. On several occasions affiant saw Mr. Dean make payoffs to customers who had won bets. Wilson also placed bets at a residence across the street from the record shop, and on five occasions the wager was accepted by Mrs. Dean. On three occasions between October, 1964, and March, 1965, Wilson placed bets at a poolroom, one of which bets was accepted by a person whom the affiant had seen deliver bet slips and money to Mrs. Dean. On eleven occasions between January and March, 1965, Wilson placed bets at 1756 East 90th Street, and on several occasions he observed Mrs. Dean leave that location carrying large envelopes. On numerous occasions other agents saw men who were carrying brown paper bags and envelopes from the record shop, proceed to the Dean residence at 10915 Wade Park Avenue and disappear inside the residence. In all of these transactions, the same four automobiles were used, three of which are named in this action. On the basis of the above information, an agent appeared before the U. S. Commissioner and stated that he had cause to believe that the Deans were engaged in an illegal numbers operation at 10915 Wade Park Avenue, without the necessary occupational tax stamp, and that he further had cause to believe that the above residence concealed "numbers lottery tickets, adding machines, adding machine tapes, tally sheets, books and records, and other numbers paraphernalia".

■ Probable cause need be established only by a quantum of evidence that would suffice to persuade a reasonable man that a crime is being, or has been, committed. It deals with probabilities, and these probabilities are of the type upon which reasonable and prudent men are accustomed to act. When there is a known reasonable ground for guilt, there is probable cause. Brinegar v. United States, 338 U.S. 160, 173–176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), and Carroll v. United States, 267 U.S. 132, 161, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

■ Evidence which would be deemed insufficient to sustain a conviction, may furnish the basis for probable cause, Locke v. United States, 11 U.S. (7 Cranch) 339, 348, 3 L.Ed. 364 (1813); and the evidence may be of a character that would render it inadmissible at trial, Draper v. United States, 358 U.S. 307, 311, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). As the Court remarked in United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965):

"* * * [A]ffidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion."

The Court said further at page 109, at page 746 of 85 S.Ct.:

"Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area

should be largely determined by the preference to be accorded to warrants."

See also United States v. Gosser, 339 F.2d 102, 111 (6th Cir. 1964) cert. denied, 382 U.S. 819, 86 S.Ct. 44, 15 L.Ed. 2d 66 (1965) (probable cause judged by reasonable man standard); United States v. Woodson, 303 F.2d 49, 50–51 (6th Cir. 1962) cert. denied, 373 U.S. 941, 83 S.Ct. 1548, 10 L.Ed.2d 696 (1963) (anonymous telephone call coupled with agent's personal observation constituted probable cause); United States v. Nicholson, 303 F.2d 330, 332 (6th Cir.) cert. denied, 371 U.S. 823, 83 S.Ct. 43, 9 L.Ed. 2d 63 (1962) (Commissioner's determination stands unless arbitrary).

■ By these standards it is difficult to imagine a stronger case, in which probable cause could be more emphatically established, than was stated in the partial recitation of the supporting affidavits. We think appellants' argument that the Commissioner merely "rubber stamped" the papers which were submitted to him, without determining probable cause for himself, is refuted by the record which indicates that the Special Agents were at the Commissioner's home for about four hours before the warrants were issued. Appellants' attempt to show the mental processes of the Commissioner by cross-examination of a Special Agent, was fruitless. As we have pointed out, the affidavits clearly authorized the issuance of the search warrants.

In appellants' third ground for reversal they complain that they did not receive a full hearing in the lower court on their motion to suppress. The record reveals that appellants' attorney wished to call several witnesses relating to the alleged illegal search and seizure, but to have the use of their testimony restricted to the motion to suppress, with leave to recall these same witnesses during the portion of the proceedings, directed at the merits. The trial judge agreed that the testimony of one witness, Mr. Dean, would be so restricted.

■ The literal terms of Rule 41(e) of Federal Rules of Criminal Procedure provide some guidance on this question. The rule provides that the court " * * shall receive evidence on any issue of fact necessary to the decision of the motion." Hearings are not to be granted simply as a matter of course, but only when the allegations of the petition, if proven, would justify relief. Grant v. United States, 282 F.2d 165, 170 (2nd Cir. 1960). Furthermore, the claims must be supported by factual allegations; and mere conclusions will not suffice. Cohen v. United States, 378 F.2d 751, 760–761 (9th Cir.) cert. denied, 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967). Under these standards it is doubtful that appellants' motion to suppress was sufficient to require a hearing, but inasmuch as the District Judge reached the merits of the motion, our review will be coextensive.

■ The import of the cases seems to be that while it is preferable to hold hearings on motions to suppress prior to trial, it is within the discretion of the District Judge to conduct such hearings at the time of the trial. United States v. Phillips, 375 F.2d 75, 78 (7th Cir.) cert. denied, 389 U.S. 834, 88 S.Ct. 40, 19 L. Ed.2d 95 (1967); Battle v. United States, 120 U.S.App.D.C. 221, 345 F.2d 438, 440 (1965); United States v. Stonehill, 254 F.Supp. 1003, 1005 (S.D.N.Y. 1966). In any event, appellants specifically waived any objection which they might have had by stipulating prior to trial that the hearing might be heard contemporaneously with the merits.

■ The scope of inquiry permitted during a hearing on a motion to suppress is within the discretion of the District Judge. Mulligan v. United States, 358 F.2d 604, 608 (8th Cir. 1966). In the instant case the parties had agreed that the District Judge, sitting without a jury, would hear the merits of the libel and the motion to suppress, together. Appellants' counsel proposed to offer five witnesses in support of the motion. As to the most vital of these witnesses, Mr. Dean, the District Judge agreed that his testimony would be considered only in

relation to the motion. As to the testimony of other witnesses, if was offered anyway, and the substance of their testimony was a denial of knowledge of any numbers activity at the appellants' residence and a contradiction of testimony of Government witnesses as to the circumstances of entry into the house on the day of the search. A review of the record fails to disclose any way in which the ruling of the District Judge could have prejudiced appellants in the presentation of their case. Nor have the appellants at any place in their briefs pointed out how they were prejudiced by the District Judge's conduct of the hearing. Under these circumstances, in our opinion the appellants received a full and fair hearing, and the District Judge's ruling was not error.

▆▆ Appellants' fourth ground for reversal is that the trial judge's findings of fact were not supported by the evidence. Forfeiture actions are subject to the Federal Rules of Civil Procedure, and hence the District Judge's findings of fact may not be set aside unless clearly erroneous. Rule 52(a) F.R.Civ.P.; United States v. One 1963 Cadillac Convertible Coupe, 352 F.2d 338 (6th Cir. 1965).

▆▆ In an action of this nature the Government has the burden of proving its case by a preponderance of the evidence. One 1961 Lincoln Continental Sedan v. United States, 360 F.2d 467, 469 (8th Cir. 1966); Clift v. United States, 350 F.2d 308, 310 (5th Cir. 1965); United States v. Bride, 308 F.2d 470, 473 (9th Cir. 1962). The District Judge made detailed findings of fact which disclosed the following: From October, 1964, through April, 1965, an employee of the Internal Revenue Service placed more than forty bets in the east Cleveland area. Almost all of these bets were placed with Mrs. Dean personally, with one of her employees, with someone with whom she had been seen working, or at a place where she had been seen taking bets. The last of these bets was placed on April 2nd, and the original of the bet slip was found at the Dean residence on April 5th. The Deans were seen by agents of the Internal Revenue Service engaging in almost every facet of the numbers business, including taking bets, counting money, compiling and transferring betting slips and money, and paying off winners. The three automobiles here involved were constantly observed during the investigation being used by the appellants and their employees in the betting operation. Although there was conflicting testimony, the District Judge found that the more than $300,000, which was seized in the raid, constituted the "bank" for the illegal numbers business, and as such was subject to forfeiture as having been used to violate the Internal Revenue laws.

▆▆ In our opinion, there was substantial evidence to support the findings of fact of the District Judge and they are not clearly erroneous.

Finally, appellants contend that the money was not listed in the search warrant and hence could not have been seized pursuant to that instrument. They further assert that the appellant, Mr. Dean, was arrested in his driveway, and the money was discovered at a point in the house remote from the arrest, and it is therefore impossible to justify seizure of the money as incident to a lawful arrest.

▆▆ It should be pointed out that officers in conducting a search are not in all instances limited to the seizure of objects detailed in the warrant. Johnson v. United States, 110 U.S.App.D.C. 351, 293 F.2d 539, 540 (1961), cert. denied, 375 U.S. 888, 84 S.Ct. 167, 11 L.Ed.2d 118 (1963). An item may be so closely related to the items detailed as to justify their seizure, i. e. where the item though not itself listed in the warrant, is an instrumentality for commission of the crime involved. See Bryant v. United States, 252 F.2d 746, 749 (5th Cir. 1958), and Sanders v. United States, 238 F.2d 145, 147 (10th Cir. 1956). In any event, the description in the instant warrant was sufficiently broad in scope to extend to the money here involved. The warrant issued for appellants' residence author-

ized a search for "numbers lottery tickets, adding machines, adding machine tapes, tally sheets, books and records, and other numbers paraphernalia."

As the Court said in Nuckols v. United States, 69 App.D.C. 120, 99 F.2d 353, 355, cert. denied, 305 U.S. 626, 59 S.Ct. 89, 83 L.Ed. 401 (1938):

> "In the search of a gambling establishment the same descriptive particularity is not necessary as in the case of stolen goods."

See also Merritt v. United States, 249 F.2d 19, 20–21 (6th Cir. 1957).

Our disposition of this point renders unnecessary a decision as to whether the money might have been seized validly, as incident to an arrest. There is no doubt that if the money was being used in an illegal business it was subject to forfeiture, as would be any other device for the commission of the crime.

In United States v. Joseph, 174 F.Supp. 539, 544–545 (E.D.Pa.1959), aff'd, 278 F.2d 504 (3rd Cir.), cert. denied. 364 U.S. 823, 81 S.Ct. 59, 5 L.Ed.2d 52 (1960), the Court, faced with the identical problem presented here, held that money was paraphernalia and equipment and subject to seizure.

As the Court observed in United States v. Currency in Total Amount of $2,223.-40, 157 F.Supp. 300, 304 (N.D.N.Y. 1957):

> "A sufficient amount of cash to meet the demands of the trade appears to have been a necessary and closely related implement or facility of the wagering business as transacted here."

See also United States v. United States Coin & Currency in the Amount of $8,-674.00, 379 F.2d 946 (7th Cir. 1967), and United States v. $1,058.00 in United States Currency, 323 F.2d 211 (3rd Cir. 1963).

The arrest did not take place in the driveway but inside the residence which was used as a "bank" and "count house".

Affirmed.