BENEVOLENT AND PROTECTIVE OR-
DER OF ELKS LODGE #615 of
BRAINERD, MINNESOTA, Plaintiff,

v.

UNITED STATES of America,
Defendant.

RICHARD HOWARD FERRELL POST
46 AMERICAN LEGION OF LITTLE
FALLS, MINNESOTA, Plaintiff,

v.

UNITED STATES of America,
Defendant.

LOYAL ORDER OF MOOSE LODGE
1246 OF BRAINERD, MINNE-
SOTA, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Nos. 5–71 Civ. 13, 5–71 Civ. 14
and 5–71 Civ. 17.

United States District Court,
D. Minnesota,
Fifth Division.

Nov. 28, 1972.

Erickson & Casey, by Carl E. Erick-
son, Brainerd, Minn., for plaintiffs.

Robert G. Renner, U. S. Atty. by J. Earl Cudd, Asst. U. S. Atty., for defendant.

NEVILLE, District Judge.

These actions are brought under 28 U.S.C. § 1346(a)(1) for the refund of Federal gambling taxes for the fiscal years ended June 30, 1962, through June 30, 1967, by the above three plaintiffs. Since they involve the same legal issues they were consolidated by this court's order of September 13, 1971.

Each of the plaintiffs, non profit organizations, over the years maintained for use a pin ball machine or machines. It is not contested that in the method of their operation with cash payoffs, these machines constituted gaming devices within the meaning of 26 U.S.C. § 4462. The government contended the plaintiffs were subject to the gambling tax imposed by 26 U.S.C. § 4461 of $250 per year per device and accordingly assessments were levied against all three plaintiffs for the tax for the several years involved plus a 50% penalty and plus interest. Claims for refund were duly filed by plaintiffs and allowed to the extent that in each case the 50% penalties and interest thereon were abated and refunded. The claims were denied however as to the amount of tax paid and interest and the Elks now seek a judgment in this action for $1,894.30, the Legion for $1,774.05 and the Moose for $1,457.55 in each instance plus interest and costs. Meantime the gaming devices which, according to the affidavit of plaintiffs' counsel on file, were not owned by plaintiffs were seized by the government and apparently declared forfeited. No claim is made in the present suits concerning this aspect in any event.

Plaintiffs have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and defendants have moved to dismiss under Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted. A 12(b)(6) motion may be treated as the equivalent of one for summary judgment where, as in the instant case, matters outside the pleadings are submitted to the court. While normally the court is reluctant to grant a motion for summary judgment, there are no genuine issues of fact in this case but only questions of law, the plaintiffs having agreed on oral argument to the government's statement of the facts contained in its brief and pleadings.[1] No criminal prosecution has been undertaken against the plaintiffs or any of them.

Plaintiffs' contention is bottomed primarily on two companion criminal cases decided by the Supreme Court, Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968). *Marchetti* and *Grosso* involved the registration provision relating to wagering,[2] and the Court found that a proper assertion of the Fifth Amendment privilege against self-incrimination is a bar to a federal criminal prosecution for failure to comply with the registration provisions of the statutes in question. Plaintiffs assert that thereby the entire statutory scheme embracing these registration provisions and the taxing of the use of gaming devices was declared unconstitutional and that the Internal Revenue Code sections relating to gaming devices are indistinguishable in purpose and effect from those involved in *Marchetti* and *Grosso*. Plaintiffs' second contention appears to be that the government's "failure to give the warnings in Miranda v. Arizona, 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966), to the managers of the plaintiffs' club rooms in light of the Marchetti principle has made the statements upon which the

---

1. By an order of this court dated September 8, 1972, the parties were to submit a stipulation of facts. Plaintiffs' acceptance of the government's statement makes a formal written stipulation unnecessary.

2. *See* (Code sections 4411–12) 26 U.S.C. §§ 4411–12.

tax was based illegal."[3] The government maintains in response that *Marchetti* and *Grosso* carefully were limited to criminal prosecutions involving the danger of self-incrimination and therefore are not applicable to the instant proceedings. Not only are these proceedings of a civil nature, but the government further argues that there is no self-incrimination issue because by a long line of authority a corporate entity, such as these fraternal organizations, cannot invoke the Fifth Amendment privilege. As to plaintiffs' second contention, the government asserts that *Miranda* warnings are not necessary in that the club managers were interviewed on the plaintiffs' premises and *Miranda* does not apply to such noncustodial investigations and interrogation.

The outcome of this case quite clearly turns on this court's interpretation of *Marchetti* and *Grosso*. The court finds little in these two cases which augurs for their application to the case at bar. As noted above, the Supreme Court determined in *Marchetti* and *Grosso* that a proper assertion of the Fifth Amendment privilege against self-incrimination constituted a bar to a federal criminal prosecution for failure to comply with the registration provision of the federal wagering tax. The Court was careful to limit its holding to the self-incrimination issue and did not declare all gambling taxes unconstitutional. In its concluding paragraph in *Marchetti* at page 61 of 390 U.S., at page 709 of 88 S.Ct., the Court summarized its holding:

"We emphasize that we do not hold that these wagering tax provisions are as such constitutionally impermissible; we hold only that those who properly assert the constitutional privilege as to these provisions may not be criminally punished for failure to comply with their requirements. If,

in different circumstances, a taxpayer is not confronted by substantial hazards of self-incrimination, or if he is otherwise outside the privilege's protection, nothing we decide today would shield him from the various penalties prescribed by the wagering tax statutes."

The express language of the Supreme Court in *Grosso* similarly suggests that the civil liability section of wagering taxes still has vitality. The Court was categorically clear that that tax liability withstood the assertion of the Fifth Amendment privilege, and also recognized that collection, though limited as to means, was still workable. The Court stated at page 69, fn. 7 of 390 U.S., at page 714 of 88 S.Ct.:

"We do not hold today either that the excise tax is as such constitutionally impermissible, or that a proper claim of privilege extinguishes liability for taxation; we hold only that such a claim of privilege precludes a criminal conviction premised on failure to pay the tax."

Furthermore, the validity and utility of the gambling taxes has been reaffirmed by the appellate and district courts which have considered the matter subsequent to *Marchetti* and *Grosso*.[4] Again, and more recently in United States v. United States Coin and Currency, 393 F.2d 499 (7th Cir. 1968), aff'd 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), the court took pains to state:

"The Government's principal argument turns upon an exceedingly narrow construction of our decisions in *Marchetti* and *Grosso*. In those cases, we took pains to make it clear that the Court in no way doubted the Government's power to assess and collect taxes on unlawful gambling activities. . . . Since it was only this method of tax collection which was subject

3. *See* plaintiffs' brief at page 3.

4. *See e. g.* United States v. O'Keefe, 70–2 USTC ¶ 15,959 (N.D.Ill.1970); Washington v. United States, 402 F.2d 3 (4th Cir. 1968); United States v. One 1965 Buick, 392 F.2d 672 (6th Cir. 1968).

to constitutional objection, we indicated that the Government remained free to collect taxes due under the statute so long as it did not attempt to punish the taxpayer for his failure to file the required documents."

Plaintiffs assert that their interpretation of *Marchetti* and *Grosso* is supported by several cases involving the forfeiture provisions of the Internal Revenue Code.[5] *See e. g.* United States v. One Philco Television, 443 F.2d 369 (5th Cir. 1971); United States v. United States Coin and Currency, 393 F.2d 499 (7th Cir. 1968) aff'd 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971).

■ The Court in *United States Coin* was dealing with forfeiture of $8,674 "being used in a bookmaking operation" and compared the forfeiture proceeding to a criminal fine. The Court emphasized that, under the long-standing principle of Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), "proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offenses committed by him, though they may be civil in form, are in their nature criminal" for Fifth Amendment purposes. *Boyd, supra*, at page 634, 6 S.Ct. at page 534.

In the case at bar we are not dealing with a forfeiture, but with the payment of a duly levied tax. *United States Coin* might have relevance, if at all, only if an effort here were being made to recover the seized and apparently forfeited pin ball machines—which in fact were not owned by these plaintiffs and so are not involved in this case in any event. Further, if there could be said to be a penalty or punishment analogous to a forfeiture by the government's collecting a 50% penalty, that was abated and refunded and is not before the court.

■ Finally, plaintiffs assert that the failure to give the *Miranda* warning to the managers of the plaintiffs' club rooms in light of the *Marchetti* principle has made the statements upon which the tax was based illegal. This contention is without merit. Not only is this not a criminal proceeding, but in order that *Miranda* rights may attach, the interrogated party must be "in custody." The Eighth Circuit has held recently that a taxpayer interviewed by an Internal Revenue Agent in the taxpayer's drugstore was not in actual or constructive custody. United States v. Hiken, 458 F.2d 24 (8th Cir. 1968). The court succinctly stated:

"We have held that neither the *Miranda* nor *Escobedo* case applies to non-custodial interrogations involving investigation of possible violations of the Internal Revenue laws."

Thus, even if this were a criminal prosecution, it is unlikely that *Miranda* rights would attach.

■ Apart from all of the above, even were the Fifth Amendment's self-incrimination privilege deemed to be applicable to the proceedings here, it is questionable whether plaintiffs as corporations or acting in a corporate capacity could assert such a defense. It is clear that a corporation has no Fifth Amendment privilege against self-incrimination. Curcio v. United States, 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957); United States v. Ellsworth, 460 F.2d 1246 (9th Cir. 1972), and cases cited therein.

Finding no merit in any of plaintiffs' constitutional arguments, the court denies plaintiffs' motion for summary judgment and grants the government's motion to dismiss.

A separate order has been entered.

---

5. See 26 U.S.C. § 7302 of the Code.