UNITED STATES of America, Plaintiff,

v.

Harold Edward SIMMONS, Defendant.

Crim. A. No. 3–83–00124.

United States District Court,
M.D. Tennessee,
Nashville Division.

June 20, 1983.

Harold McDonough, Asst. U.S. Atty., Nashville, Tenn., for plaintiff.

Paula Godsey, Asst. Public Defender, Nashville, Tenn., for defendant.

MEMORANDUM OPINION AND ORDER

NEESE, Senior District Judge, sitting by designation and assignment.

The defendant Mr. Harold Edward Simmons moved timely for an order suppress-

ing "* * * all evidence derived from the government agents['] illegal seizure of a duplicate identification card bearing defendant's picture." Rules 12(b)(3), 41(f), F.R.Crim.P. It is urged in support of such motion that the right of the defendant to be free from unreasonable searches and seizures, Constitution, Fourth Amendment,[1] was violated when such duplicate identification card was acquired by agents of the United States Secret Service (USSS).

## I.

▆▆▆ Only for purposes of considering the motion of Mr. Simmons, the Court assumes that all the pertinent facts he alleged in its connection are true. Specifically, it is assumed:

—that Hollywood Studio (Hollywood) is a photographic business located in downtown Nashville, Tennessee;

—that, in the regular course of its business, Hollywood makes and sells members of the general public "International Identification Cards" for about $10, and that those cards contain a picture of the purchaser;

—that, as a regular business practice, Hollywood maintains a duplicate of each such card it has sold with the express intention of delivering that duplicate to the USSS;

—that Hollywood does not warn its customers that such duplicate will be forwarded routinely to the USSS;

—that Mr. Simmons purchased such an identification-card from Hollywood without knowing that a duplicate thereof would be given to the USSS;

—that, subjectively, Mr. Simmons had an actual expectation of privacy with regard to such card and in respect to Hollywood's business records relating to such transaction; and,

—that, without being directed to do so by a search-warrant or other legal process, Hollywood delivered to the USSS a duplicate of the international identification-card sold by Hollywood to him.[2]

## II.

Consistently with its holding in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the Supreme Court

"* * * uniformly has held that the application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable' or a 'legitimate expectation of privacy' that has been invaded by government action. [Citations omitted]. This inquiry, as Justice Harlan aptly noted in his *Katz* concurrence, normally embraces two discrete questions. The first is whether the individual, by his conduct, has 'exhibited an actual (subjective) expectation of privacy,' 389 U.S. at 361 [88 S.Ct. at 516]—whether, in the words of the *Katz* majority, the individual has shown that 'he seeks to preserve [something] as private.' *Id.,* at 351 [88 S.Ct. at 511]. The second question is whether the individual's subjective expectation of privacy is 'one that society is prepared to recognize as "reasonable"'; *id.,* at 361 [88 S.Ct. at 516]—whether, in the words of *Katz* majority, the individual's expectation, viewed objectively, is 'justifiable' under the circumstances. * * *"

---

1. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Constitution, Fourth Amendment, *supra.*

2. In view of these assumptions of fact, no evidentiary hearing is warranted; hearings on motions to suppress evidence "* * * are not to be granted simply as a matter of course, but only

when the allegations of the [motion], if proven, would justify relief. Furthermore, the claims must be supported by factual allegations; and mere conclusions will not suffice. * * *" *United States v. One 1965 Buick,* 392 F.2d 672, 678[8] (6th Cir.1968) (citations omitted).

With the factual allegations of this motion being assumed as true, the issue becomes one purely of law. The Court is "* * * not required to permit the presentation of evidence which would have no effect on its ruling of law. * * *" *United States v. Frazier,* 584 F.2d 790, 794[5] (6th Cir.1978).

*United States v. Knotts,* —— U.S. ——, ——, 103 S.Ct. 1081, 1085, 75 L.Ed.2d 55 (1983), quoting from *Smith v. Maryland,* 442 U.S. 735, 740–741, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979). Application of these determinative criteria to the present situation results in the conclusion that the Fourth Amendment afforded the movant Mr. Simmons no protection.

■ For present purposes only, this Court assumes that Mr. Simmons, by his conduct, exhibited an actual (subjective) expectation of privacy of all records that might have been maintained by Hollywood regarding his purchase from such business of an international identification-card, including any duplicate of such card. His situation does not, however, fall within the protection afforded by the Fourth Amendment for the reason that, under the governing decisions of the Supreme Court, his subjective expectation of privacy is not one that Society is prepared to recognize as "reasonable" or "legitimate."

■ Mr. Simmons makes no claim that his Fourth Amendment rights were violated when Hollywood recorded his image on film. The taking of a person's picture for identification purposes is not proscribed by the Fourth Amendment. *United States v. Holland,* 438 F.2d 887, 889[6] (6th Cir.1971). " * * * No person * * * can reasonably expect that his face will be a mystery to the world. * * * " *United States v. Dionisio,* 410 U.S. 1, 14, 93 S.Ct. 764, 771, 35 L.Ed.2d 67 (1973).

Mr. Simmons' complaint has its primary focus on the fact that Hollywood provided the USSS with a duplicate of the identification-card which he purchased from Hollywood; he does not claim that the duplicate-card (as opposed to the original-card sold to him) constituted his "private papers" or that he holds any ownership or possessory interest therein. On the other hand, it is obvious that any such duplicate-card was a part of the business-records of Hollywood which were generated as a result of the transaction of Mr. Simmons with that commercial-enterprise.

■ The law is clear: no person has a legitimate expectation of privacy in the business-records of an entity with whom business has been conducted and, therefore, has no interest protected by the Fourth Amendment in such records. *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976) (bank-depositor has no legitimate expectation of privacy and thus no Fourth Amendment interest in copies of checks and deposit slips retained by his bank); *United States v. Payner,* 447 U.S. 727, 731, 100 S.Ct. 2439, 2443–44, 65 L.Ed.2d 468 (1980), *reh. den.,* 448 U.S. 911, 101 S.Ct. 25, 65 L.Ed.2d 1172 (1980) (bank-customer has no legitimate expectation of privacy in loan-guarantee agreement stolen by government agents from briefcase of bank-official); *see Donaldson v. United States,* 400 U.S. 517, 522, 91 S.Ct. 534, 538[2], 27 L.Ed.2d 580 (1971) (employee has no Fourth Amendment interest in the employment-records of his employer).[3] That being so, even if Mr. Simmons had an actual (subjective) expectation of privacy, and even if Hollywood could be said to have acted solely as an agent of the government, " * * * there would be no intrusion upon [Mr. Simmons'] Fourth Amendment rights. * * * " *United States v. Miller, supra,* 425 U.S. at 443, 96 S.Ct. at 1624.

■ Mr. Simmons argues that, because of the alleged "sweetheart" relationship between Hollywood and the USSS,[4] the

---

3. *Cf. Smith v. Maryland, supra* (telephone-user has no legitimate expectation of privacy in the numbers he dials on his phone); *Couch v. United States,* 409 U.S. 322, 335–336, 93 S.Ct. 611, 619–620, 34 L.Ed.2d 548 (1973) (taxpayer has no legitimate expectation of privacy in his *own* records while they are in the possession of his accountant).

4. Hollywood can hardly be faulted for cooperating with agents of the USSS in their efforts to enforce our federal laws. Undoubtedly, crime is " * * * of grave concern to society, * * * " *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948), and one does not act improperly in providing law-enforcement officials with information concerning a possible offense. Except for those persons protected by a constitutional, common-law, or statutory privilege, the public has a right to every person's evidence. *United States*

government forces, in effect " * * * a nation-wide identification system on Americans. * * * " Yet, he does not contend that the government or anyone else forced him to have his picture taken or to purchase an identification-card; neither does he argue that his transaction with Hollywood was other than a purely voluntary undertaking on his part.

The Supreme Court " * * * consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties. * * " *Smith v. Maryland, supra,* 442 U.S. at 743–744, 99 S.Ct. at 2582. By revealing voluntarily to Hollywood the information necessary for his acquisition of the identification-card (including his photographic-likeness), Mr. Simmons "assumed the risk" that Hollywood would disclose the same to law-enforcement officers. *Id.* This is true, even if Mr. Simmons acted on the assumption that such information would " * * * be used only for a limited purpose and the confidence placed in [Hollywood] w[ould] not be betrayed. * * * " *United States v. Miller, supra,* 425 U.S. at 443, 96 S.Ct. at 1624[6].

This Court " * * * may not exclude evidence under the Fourth Amendment unless it finds that an unlawful search or seizure violated the defendant's own constitutional rights. * * * " *United States v. Payner,* 447 U.S. at 731, 100 S.Ct. at 2444[1]. This Court, not having so found, the motion of the defendant Mr. Harold Edward Simmons hereby is

OVERRULED.

*v. Nixon,* 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974).

Frequently, it is observed judicially, in prosecutions of this nature, an identification-card will be purchased from a retail establishment (such as Hollywood) bearing the picture of the purchaser but identifying him falsely as someone else—that "someone else" being usually the payee of a stolen check drawn on the Treasury of the United States. The obvious purpose of obtaining such a "fake" identification card is to facilitate the illegal cashing of the stolen check.

The Constitution did not prohibit the USSS from enlisting the assistance of Hollywood for the purpose of catching persons who might use this method to violate the law. *Cf. Davis v. Mississippi,* 394 U.S. 721, 727, n. 6, 89 S.Ct. 1394, 1397, n. 6, 22 L.Ed.2d 676 (1969) ("the police have the right to request citizens to answer voluntarily questions concerning unsolved crimes"). The Supreme Court " * * * ha[s] never equated police efficiency with unconstitutionality * * *." *United States v. Knotts, supra,* —— U.S. at ——, 103 S.Ct. at 1086.