## DAVIS *et al.* v. OKLAHOMA STATE BAPTIST COLLEGE *et al.*

No. 2892.   Opinion Filed July 22, 1913.

(134 Pac. 61.)

1.   **APPEAL AND ERROR**—Findings—Evidence.   Where the evidence reasonably supports the findings of the lower court, the judgment will be affirmed.

2.   **DEEDS**—Capacity to Execute—Sufficiency of Evidence.   For circumstances held insufficient to require a finding that a grantor was mentally incapable of making a valid conveyance, see opinion.

3.   **SAME**—Undue Influence.   For circumstances held insufficient to require a finding that a conveyance was procured by undue influence, see opinion.

(Syllabus by Rosser, C.)

*Error from District Court, Grant County;*
*Wm. M. Bowles, Judge.*

Action by Sam C. Davis and others against the Oklahoma State Baptist College and others.   Judgment for defendants, and plaintiffs bring error.   Affirmed.

*J. B. Drennan* and *F. G. Walling,* for plaintiffs in error.

*W. C. Tetirick, J. G. McKelvy, John S. Burger,* and *J. E. Curran,* for defendants in error.

Opinion by ROSSER, C.   J. H. Robinson conveyed the land in controversy in this action to the Oklahoma State Baptist College.  The conveyance was made principally as a donation to the college, but as a part of the consideration for the conveyance the college paid him the sum of $2,000, and also agreed to provide a room for his occupancy during his lifetime, and did provide him with a room and board for several months, and until a guardian was appointed for him upon the petition of his daughter, Mrs. Infield.  At the time he made the conveyance he was about 83 years old.  Prior to the making of the conveyance to the land in controversy Robinson had mortgaged it for $1,000, and when he conveyed it to the college it mortgaged the land to the Bank of Nardin for the sum of $3,000, and used the money thus obtained to pay off the previous mortgage which Robinson had executed, and to pay him the $2,000, which he received as part consideration for the conveyance.  Some time after the land was conveyed to the college it conveyed the land to the defendant V. C. Hagaman for the consideration of $9,000, a part of which he paid by assuming the mortgage previously executed to the Bank of Nardin.  This suit was brought by the plaintiffs, as the next of kin and heirs to J. H. Robinson, to set aside and cancel his conveyance to the college, the mortgage from the college to the Bank of Nardin, and the conveyance from the college to Hagaman.  The trial court rendered judgment for the defendants, and the case is appealed.

The only question involved is whether the evidence sustains the finding of the court.  The evidence in substance, was that Robinson was a member of the Baptist Church, probably a little more devout than is customary, and had lived in Oklahoma for a number of years.  His children were grown, and his only living child, so far as appears from the record, was Mrs. Infield, a lady about 56 years old.  There is no evidence in the record as to her financial condition, neither is there any evidence as to the financial condition of James H. Blakesley and John B. Blakesley, who were his nephews.  He had a pension of $20 a month, and only a few hundred dollars in other property aside from the land.  He had previously made large donations to the Oklahoma

Baptist Orphanage of Oklahoma City, and he gave the $1,000, for which the land was mortgaged, to the defendant the Baptist College. It was his wish and desire that the proceeds of the land should be used in building a dormitory for girls, and that it should be named for him and known as "Robinson Hall." There was some evidence of slight eccentricities upon the part of the old man. He lived almost in squalor in one room of a three-room house, renting the other two rooms, and he dressed shabbily. There was also some evidence that he was somewhat forgetful. He would forget where he placed small articles, such as pension certificates and things of that sort, and that on some occasions he forgot having made small payments. But there was no evidence tending to show that he was not in his right mind. From all the evidence he was in as good, if not better, possession of his faculties than most men of his age. See *Francis v. Aid Society*, 149 Iowa, 158, 126 N. W. 1027.

It is also claimed that he was induced, through undue influence, to execute the conveyance. One witness testified that the Reverend Hill, who was a student in the Baptist College, and at the same time pastor of the church in which the old man worshipped, would call upon him and read passages of Scripture to him for the purpose of inducing him to convey his property to the college. This witness stated that she had heard the minister read Matt. xix, 24, "And again I say unto you, it is easier for a camel to go through the eye of a needle than for a rich man to enter the kingdom of heaven." She admitted, however, that she was eavesdropping at the time she heard this Scripture being read. Her testimony does not bear strong earmarks of truthfulness. The trial court, while not saying that his judgment would have been different had he believed her, indicated very strongly that he did not believe her statements. Of course a minister of the gospel has considerable influence with members of his church. It is believed, however, that members of the Baptist Church are as far from being controlled by their pastors as any other denomination, and it is not believed that the mere reading of this passage of Scripture, familiar to all Bible readers, and to a great many who never read the Bible, could have been

sufficient of itself, to induce this old man to make a donation which he otherwise would not have made.

The circumstances under which it was made, the fact that he provided for himself so carefully, and required the payment of a considerable sum of money, in connection with the other evidence in the case, of lawyers and bankers who knew him, and letters which he wrote about the time the donation was made, are amply sufficient to sustain the judgment of the trial court, and it should be affirmed.

By the Court: It is so ordered.