**Jack Dailey McKEEHAN, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

**No. 20328.**

United States Court of Appeals, Sixth Circuit.

Feb. 19, 1971.

740

Weick, Circuit Judge, concurred and filed opinion.

Jack D. McKeehan, Knoxville, Tenn., on brief for petitioner-appellant.

John L. Bowers, Jr., U. S. Atty., W. Thomas Dillard, Asst. U. S. Atty., Knoxville, Tenn., on brief for respondent-appellee.

Before WEICK and CELEBREZZE, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

CELEBREZZE, Circuit Judge.

This is an appeal by an intervenor from the United States District Court, Eastern District of Tennessee in a civil action *in rem* to enforce a forfeiture of certain firearms seized by the United States under the authority of 26 U.S.C. § 5872(a), as amended in 1968, and 26 U.S.C. § 7321 (1964). 26 U.S.C. §§ 7323, 7325 (1964). The District Court found that the seized firearms were not registered in the National Firearms Registration and Transfer Record as required by law, 26 U.S.C. § 5841, as amended in 1968, and it further found that the intervenor's admitted possession of the seized firearms in June, 1969 was proof of the unlawful act of possessing a firearm which is not registered to the

possessor in the National Firearms Registration and Transfer Record. 26 U.S.C. § 5861(d), as amended in 1968. Based on such findings, the District Court held that the intervenor-possessor's failure to register the seized weapons during the amnesty period made his continued possession unlawful; and therefore, the firearms seized by the United States are lawfully forfeited to the United States of America.

The civil forfeiture proceedings in the District Court were tried upon the following stipulated facts:

## STIPULATION OF FACTS

### (Filed January 13, 1970)

That the machineguns in question were acquired by the intervening petitioner while a paratrooper in combat during World War II; that these weapons were shipped by petitioner as authorized by the U. S. Military authorities to petitioner's parents, Mr. and Mrs. J. Colson McKeehan, at 919 Temple Avenue, Knoxville, Tennessee, during the spring of 1945 along with other war souvenirs.

That the instant machineguns are "firearms" as defined in 26 U.S.C. 5845 (a) (6) as further defined in 26 U.S.C. 5845(b).

That following World War II and while a student in college during 1946 or 1947, petitioner gave possession of these machineguns to a longtime childhood friend, Henry W. McIlwaine, Jr., then residing with his parents, Mr. and Mrs. H. Whiting McIlwaine, at 4110 Towanda Trail, Knoxville, Tennessee; that said friend by hobby collected guns; that the understanding between petitioner and his friend was that, should petitioner ever have a gun room in years to come, he could reacquire possession of these three machineguns for such purpose; that said guns remained stored in the home of the parents of petitioner's friend up until early spring of 1969, the father of petitioner's friend having died on December 8, 1968, and the family homestead was being vacated during March, 1969; petitioner's friend, Henry

W. McIlwaine, Jr., and petitioner both had finished college and long since left the residences of their respective parents and, for [fol. 2] practical purposes, had forgotten about the three machineguns.

During the moratorium for registering machineguns between November 2 and December 1, 1968, said machineguns were still stored in the residence of H. Whiting McIlwaine, Sr., at 4110 Towanda Trail, S. W., Knoxville, Tennessee. Whatever publicity was utilized by the U. S. Government authorities to publicize the moratorium did not serve to bring the machineguns to mind for either petitioner or his friend.

That petitioner, his friend, and his friend's father all qualify as law abiding citizens; that these guns could have been legally registered during the amnesty period of November 2, 1968, through December 1, 1968, and that said possession would have been for a lawful purpose.

On or about June 16, 1969, petitioner voluntarily made known, delivered and surrendered said machineguns to the U. S. Treasury Department, Internal Revenue Service, Alcohol and Tobacco Tax Division office in Knoxville, Tennessee.

That the three machineguns have a fair market value exceeding that given by authorized representatives of the United States Government at the time seizure was declared during August, 1969. That petitioner satisfied the necessary steps to have this matter transferred to this honorable court for judicial review of his rights pertaining to these guns. That shortly following commencement of this forfeiture action by the United States Government, petitioner was indicted, arrested, released under $1,000 bond, arraigned, plead "not guilty" and scheduled for trial on November 18, 1969. By agreement, the forfeiture matter was to be determined simultaneously with the criminal charge. On November 17, 1969, on its own motion, the United States dismissed with full prejudice its criminal indictment. On November 18, 1969, petitioner appeared with his corroborating witness, Henry W.

McIlwaine, Jr., and, by agreement, this Court [fol. 3] took the matter under advisement on a stipulation of facts, allowing petitioner and the Government time to file briefs.

On appeal, it is contended that statutory forfeiture proceedings are quasi-criminal actions against the owner of the forfeited items and should not be applied to owners who had no actual notice of the thirty-day amnesty period created by Congress under the 1968 Act Amendments, Pub.L. 90–618 § 207(b)–(d),[1] and who otherwise have not engaged in criminally culpable nor wilfully negligent conduct.

■ It is well established in American jurisprudence,[2] however, that absent a contrary legislative expression [3] personal property may be seized and statutorily forfeited without payment of any compensation even though its owner may not have engaged in any conduct which may be characterized criminal or wilfully negligent. Various Items of Personal Property v. United States, 282 U.S. 577, 581, 51 S.Ct. 282, 75 L.Ed. 558 (1931); United States v. One Ford Coupe Automobile, 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279 (1926); Goldsmith Jr.–Grant Co. v. United States, 254 U.S. 505, 41 S.Ct. 189, 65 L.Ed. 376 (1921); Dobbin's Distillery v. United States, 96 U.S. 395, 24 L.Ed. 637 (1877); Henderson's Distilled Spirits, 14 Wallace (81 U.S.) 44, 20 L.Ed. 815 (1871); Palmyra, 12 Wheat. (25 U.S.) 1, 6 L.Ed. 531 (1827).

This case, however, contains four interesting features which distinguish it from the above-cited precedents.

First, Appellant merely possessed the seized firearms without any actual

1. The regulations promulgated pursuant to Pub.L. 90–618 § 207(b), permit the Director of the Alcohol and Tobacco Tax Division of the Internal Revenue Service, Treasury Department, to "establish periods of amnesty, not to exceed ninety (90) days in the case of any single period with such immunity from liability as the Director determines will contribute to the purposes of this part." 26 CFR 179.120 (b).

2. For a summary of civil forfeiture under the laws of the Germanic tribes, Rome, Greece and England, see Oliver W. Holmes, The Common Law ed. Mark DeWolfe Howe (Cambridge, Mass.1963) at 2–12.

In England, common law forfeiture resulted from a conviction and judgment for treason, misprision of treason, praemunire, drawing a weapon on a judge, papish recusancy and in many cases of felony. Lands were forfeited at attainder but transfer of title related back to the time of the offense thereby defeating intermediate purchasers. Chattels and goods were forfeited at the time of conviction and there was no relation back to the time of the offense. Sir William Blackstone, Commentaries on the Laws of England, ed. Thomas M. Cooley, 4th Ed. James DeWitt Andrews (Chicago, 1899), b. ii at 267, 421; b. iv at 381, 387. See Thomas Mitchell, The Development of the Law of Forfeiture in the United States (New Haven, 1969). This common law doctrine, however, was not cognizable "on the revenue side of the exchequer." The Palmyra, 12 Wheaton (& US) 1 (1827).

In Japan, under some circumstances an innocent owner or purchaser of forfeitable goods is given a judicial remedy, Japanese Customs Law (Law #61 of 4/2/54), Article 118(1), rather than the non-judicially reviewable administrative remedy given to an innocent owner or purchaser in the United States, 19 U.S.C. § 1618 (1964), United States v. One 1961 Cadillac, 337 F.2d 730 (6th Cir. 1964). See Mitchell, supra at 13–14.

3. For example, in order to work a forfeiture under certain statutes relating to the preservation of game, the owner of the seized goods must be criminally convicted of violating certain provisions of the Conservation Code, 16 U.S.C. § 171 (1964). Also see 49 U.S.C. § 782 (1964) which protects certain innocent owners from statutory forfeitures of their motor vehicles. A similar section, § 204(b), of the Liquor Law Repeal and Enforcement Act of 1935 provides for judicially supervised remission of forfeitures where the claimant acted in good faith and there is no showing of wilful negligence. Also as noted above, Congress created a discretionary administrative power to remit forfeitures, 26 U.S.C. § 7327, 19 U.S.C. § 1618 (1964). The exercise of the administrator's discretion, however, is not subject to judicial review. United States v. One 1961 Cadillac, 337 F.2d 730 (6th Cir. 1964).

knowledge [4] that Congress has placed upon all passive possessors of certain firearms a duty to come forward and register their firearms. Pub.L. 90–618 § 207 (b); 26 C.F.R. §§ 179.120, 179.190–91 and 179.200–201. And further not only was Appellant without actual notice that he was required to register his firearms for such a passive purpose as possessing personal souvenirs; but also he was not engaging with the firearms in any activity which normally would have placed him on notice as to the statutory registration requirement. Historically, we can find no other case involving the civil forfeiture of chattels in which the allegedly inequitably treated owner had not engaged in some affirmative commercial enterprise, financing, transfer or sale which would have placed him in a position where he either knew or should have known of the existence of the revenue laws regulating his activity. Various Items of Personal Property v. United States, *supra* (corporate owner of a distillery, warehouse and denaturing plant engaged in production of alcohol); United States v. One Ford Coupe Automobile, *supra* ("innocent" corporate owner who was financing sale of automobile on conditional sales contract); Goldsmith Jr.–Grant Co. v. United States, *supra* ("innocent" corporate owner who sold automobile on credit and retained title for unpaid purchase money); Dobbin's Distillery v. United States, *supra* (owner of a distillery and related property who without personal knowledge of lessee's misconduct leased his property and suffered it to be occupied and used by lessee); Henderson's Distilled Spirits, *supra* (purchaser of distilled spirits at bonded warehouse assumes risk the distilled spirits he purchases and carries away may have been made or used in violation of the Internal Revenue laws).

Second, Appellant possessed firearms which were lawfully imported under the auspices of the United States Military authorities [5] and which Congress has not declared to be contraband *per se* (e. g. counterfeit coins or securities of the United States) or inherently dangerous to society such that their use was limited to law enforcement officials or for purposes of scientific inquiry (e. g. marijuana, heroin or opium). Quite the contrary, possession of firearms is generally lawful except when such guns are intended to be used or have been used in violation of the National Firearms Act, its Amendments or the regulations issued pursuant thereto. See 26 U.S.C. § 7302; 49 U.S.C. § 781(b) (2) (1964). Also, the collection of most firearms as "war souvenirs" or "curios" is recognized by Congress to be a lawful activity. See 18 U.S.C. § 925(a) (4) (A), 925(d) (2), as amended in 1968; 26 C.F.R. §§ 178.11 (c), 178.26. And further the continued possession of the very firearms in question is recognized by Congress to be a lawful activity as long as they are duly registered. Pub.L. 90–618 § 217 (1968); 26 C.F.R. § 179.120.

In the instant case, the stipulated facts do not support a conclusion that the Appellant used or intended to use the seized firearms in violation of the law. The parties have stipulated that the Appel-

---

4. While it is not entirely clear from the wording of the stipulation of facts that Appellant was not actually notified of the existence of the amnesty period, the District Court found that the "petitioner or his friend had no actual knowledge of this amnesty period." And although there is some question in this Court as to the standard of review given to factual findings based solely on depositions and stipulations, *compare* United States Steel Corporation v. Fuhrman, 407 F.2d 1143 (6th Cir. 1969) *with* General Electric Co. v. Sciaky Bros., Inc., 415 F.2d 1068 (6th Cir. 1969), *see generally*, 5 Moore, Federal Practice 52.04 (1968 ed.), we affirm the District Court's finding of no actual notice where it has been stipulated that the District Court had the benefit of the "petitioner appear[ing] with * * * [a] corroborating witness." Rule 52(a), Fed.R.Civ.Proc.

5. No doubt such lawful importation occurred under a statutory or administrative predecessor to 18 U.S.C. § 925(a) (4) (A), as amended in 1968.

lant was a "law abiding citizen" who placed his firearms in a gun collection and possessed them—actually or constructively—with the continuing lawful purpose of maintaining valuable "souvenirs" or "curios" from his wartime experiences. While such stipulations do not, of course, free the Appellant from his registration obligation prior to the National Firearms Act Amendments of 1968, they do strongly suggest that Appellant did not have the requisite *mens rea* to support a conviction of violating the National Firearms Act by his possession of the seized firearms from 1945 to 1968. 26 U.S.C. § 5841 (1964). *See* Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968) (whereby the Appellant, in any case, may have been able to shield himself from criminal sanctions by invoking his Fifth Amendment privilege). After the enactment of the National Firearms Act Amendment of 1968, the voluntary actions of the Appellant in attempting to register his firearms and the stipulated dismissal of any criminal charges against Appellant is strong evidence that the seized firearms were not involved in a violation of the National Firearms Act which would have subjected them to seizure and forfeiture. Further, this case does not even present the usual allegations in most forfeiture actions under the Internal Revenue laws that excise and penal taxes are due and payable from such prior activity as the manufacture, importation or sale of the confiscated goods. Finally, on the facts in this case, we cannot say that the seized firearms may properly be classified as "contraband articles" and retained upon that theory. United States v. Jeffers, 342 U.S. 48, 53–54, 72 S.Ct. 93, 96 L.Ed. 59 (1951); United States v. One 1965 Buick, 392 F.2d 672 (6th Cir. 1968). See United States v. Black, 431 F.2d 524, 530 (6th Cir. 1970) (dictum: sawed off shotgun received by accused as a result of *nontax paid transfer* after effective date of National Firearms Act Amendment of 1968 is defined as contraband) (emphasis added).

Third, Appellant's firearms are not instrumentalities of crime whose seizure and forfeiture is justified by a Congressionally declared purpose to make more costly or to limit the access to the means of criminal activity. *See e. g.,* Congressional history of 1950 Amendments to 49 U.S.C. §§ 781, 782 (1964) in which definition of contraband article as it relates to narcotic drugs, was expanded so that the vehicles, vessels and aircraft—the "major capital investment to criminals" and "operating tools of dope peddlers"—may be seized and forfeited. 1950 U.S.Code Cong.Service 2953. *See also,* United States v. Jeffers, *supra,* 342 U.S. at 53–54, 72 S.Ct. 93, United States v. Brig Malek Adhel, 2 How. 210, 11 L.Ed. 239 (owner of a vessel who may not have engaged in any personal misconduct may be deprived of his vessel if it is used in piratical aggression where "the necessity of the case requiring it as the only adequate means of suppressing the offense or wrong, or of insuring an indemnity to the injured party," Dobbin's Distillery v. United States, 96 U.S. at 400).

Fourth, the instant forfeiture cannot be justified on administrative grounds, such as: the recouping of the costs of investigating and enforcing the law, Helvering v. Mitchell, 303 U.S. 391, 401, 58 S.Ct. 630, 82 L.Ed. 917 (1938), or collecting an unpaid registration or transfer tax due, United States v. One 1965 Buick, 392 F.2d 672 (6th Cir. 1968). This lack of administrative justification results from the fact that Appellant is not alleged to have engaged in any activity with an intent to defraud the United States of any revenues or to have failed to pay the revenue taxes due, if any, on the manufacture, importation, sale or transfer of the seized firearms.

In summary, the instant forfeiture action depriving Appellant of his personalty without any compensation is distinguishable from prior precedents on, at least four grounds: (1) the inadequacy of notice to the Appellant considering the passive nature of his pos-

session, (2) the lawfulness of purpose of Appellant's interest in possessing the firearms, (3) the lack of any declared legislative policy that forfeiture under the circumstances of this case will aid in enforcing the criminal laws or make the instrumentalities of crime more difficult or costly to obtain and (4) the lack of any sound administrative or revenue purpose to justify the instant forfeiture. Based on these facts, we find the imposition of forfeiture on the Appellant is penal and causes an unconstitutional deprivation of personal property "without just compensation." Fifth Amendment, United States Constitution.

We appreciate, of course, that the instant action is a civil action *in rem* against the seized firearms and not a criminal action *in personam* against the possessor of the firearms. 26 U.S.C. § 7323(a). And further, we are aware that chattels are not entitled to constitutional due process. This action, however, is not a typical *in rem* forfeiture action. The lack of any valid legislative, administrative or revenue purpose for pursuing the item *in rem*, rather than the person of the possessor, gives us a basis for conceiving of this action for certain constitutional purposes as an action *in personam*. In so doing, we are not creating a "legal fiction", but destroying one.[6] We are characterizing the facts underlying this action as to their substance. We are following the mandate of the United States Supreme Court when it has repeatedly held that under certain circumstances a possessor of chattels is entitled to the protection of the Fourth and Fifth Amendments when civil forfeiture actions take on a quasi-criminal or penal cast. One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965); United States v. Boyd, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1885).

Lastly, we believe that the dismissal of the criminal charges against Appellant raises a substantial question as to whether the United States is collaterally estopped from securing a forfeiture of Appellant's personalty for its alleged use in violation of 26 U.S.C. § 5861(d), as amended in 1968.[7] In that this question

---

6. Various Items of Personal Property v. United States, 282 U.S. 577, 581, 51 S.Ct. 282 (1931) (in which the United States Supreme Court upheld a civil forfeiture proceeding while observing, "it is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient.") 282 U.S. at 581, 51 S.Ct. at 284.

7. On the same day and before the same federal judge, the United States filed a three-count criminal indictment against the Appellant alleging that he wilfully and knowingly received and possessed three firearms in violation of 26 U.S.C. §§ 5861(d) and 5871, as amended in 1968 and the instant forfeiture action. Both cases were tried on precisely the same set of stipulated facts. The criminal counts were dismissed with full prejudice, but—in the words of the District Court—"the accused weapons be, and same hereby are, *guilty* and forfeited to the United States of America." (Emphasis added.)

Under certain limited circumstances the United States Supreme Court has held that an acquittal or dismissal with full prejudice in a federal criminal case may collaterally estop the United States from instituting a civil proceeding against the acquitted individual in a second case based upon the same factual issues. Coffey v. United States, 116 U.S. 436, 6 S.Ct. 437, 29 L.Ed. 684 (1886). United States v. Zucker, 161 U.S. 475, 478–479, 16 S.Ct. 641, 40 L.Ed. 777 (1896) (dictum), Stanley v. United States, 111 F.2d 898 (6th Cir. 1940), United States v. A Lot of Precious Stones and Jewelry, 134 F. 61 (6th Cir. 1905). *See* Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), United States v. One 1935 Pontiac, 105 F.2d 149 (6th Cir. 1939) (dictum). *Contra,* United States v. One Dodge Sedan, 113 F.2d 552 (3rd Cir. 1940). But see limiting construction given to *Coffey* decision in Stone v. United States, 167 U.S. 178, 17 S.Ct. 778, 42 L.Ed. 127 (1897); Murphy v. United States, 272 U.S. 630, 47 S.Ct. 218, 71 L.Ed. 446 (1926). Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630 (1938). This principle of collateral estoppel may have added force where the second "civil" proceeding is essentially

was not argued before this Court on appeal, we shall refrain from considering it at this time.

The judgment of the District Court is reversed.

WEICK, Circuit Judge (concurring).

I concur in the judgment.

The stipulation of facts states:

"On November 17, 1969, on its motion, the United States dismissed with full prejudice its criminal indictment."

In my opinion the dismissal with full prejudice is equivalent to an acquittal of the charge of possession of the unregistered firearms. The Government can no longer prosecute McKeehan for the same offense.

On February 4, 1970, the District Court, in its memorandum, entered the following order:

"It is, therefore, ordered that the accused weapons be, and the same hereby are, guilty and forfeited to the United States of America."

The weapons were not contraband. They were war trophies brought into this country by a soldier, with the permission of the Government. The weapons committed no offense. 26 U.S.C. § 5861(d) makes it an offense for "any person * * * (d) to receive or possess a firearm which is not registered to him in the National Registration and Transfer Record * * *."

Section 5871 provides a penalty for any person "who violates or fails to comply with any provision of this chapter * * *."

Section 5872 provides that "any firearm involved in any violation of the provisions of this chapter shall be subject to seizure and forfeiture * * *."

In view of the dismissal of the indictment with full prejudice, which indictment charged violation of Section 5861 (d), it cannot be said that the firearms were involved in a violation of this chapter. Because of such dismissal, the Government ought to be estopped, not only from instituting another criminal charge against McKeehan, but also from forfeiting his property for the same alleged offense. The judgment of dismissal should be conclusive. By forfeiting McKeehan's property, the Government is still attempting to punish him for possession of the firearms although it has foreclosed itself from prosecuting him.

Coffey v. United States, 116 U.S. 436, 6 S.Ct. 437 (1886) sustains the defense of estoppel. There a defendant had been acquitted on criminal charges involving violations of the Internal Revenue laws. Subsequently the Government brought a forfeiture proceeding against the defendant's property, based on the same violations of the Internal Revenue laws. The Court denied forfeiture. The Court said:

"There could be no new trial of the criminal prosecution after the acquittal in it; and a subsequent trial of the civil suit amounts to substantially the same thing, with a difference only in the consequences following a judgment adverse to the claimant." 116 U.S. at 443, 6 S.Ct. at 440–441.

The forfeiture of McKeehan's property clearly constitutes punishment of him for violation of the statute; but the Government has precluded itself from inflicting such punishment.

*Coffey* has been cited as—

"* * * authority for the proposition that if the present defendants had been proceeded against criminally on account of the same acts and facts that must be shown in order to sustain this action under the statute of 1890, and had been acquitted, the verdict and judgment of acquittal would have bar-

criminal in character. *See* United States v. LaFranca, 282 U.S. 568, 574–575, 51 S.Ct. 278, 75 L.Ed. 551 (1931); United States v. Chouteau, 102 U.S. 603, 26 L. Ed. 246 (1880). *Cf.* Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 700–701,

85 S.Ct. 1246 (1965), United States v. Kramer, 289 F.2d 909 (2d Cir. 1961). *But see* Helvering v. Mitchell, *supra* (dictum); United States v. One Dodge Sedan, *supra*.

red a subsequent civil proceeding, based on the same acts and facts, and instituted to enforce a forfeiture * * *." United States v. Zucker, 161 U.S. 475, 478–479, 16 S.Ct. 641, 642 (1896).

The Coffey doctrine, however, has been distinguished and limited. Starting with Stone v. United States, 167 U.S. 178, 186–187, 17 S.Ct. 778, 42 L.Ed. 127 (1897), the Court limited *Coffey's* application to instances where the second suit, civil in nature, imposed a penalty or penal sanction on the same individual who was previously acquitted of the criminal charge. *See,* Murphy v. United States, 272 U.S. 630, 632, 47 S.Ct. 218 (1926) where *Coffey* was held inapplicable because the subsequent civil suit's purpose was prevention, not punishment. In Helvering v. Mitchell, 303 U.S. 391, 397, 58 S.Ct. 630, 632 (1938) the Court said:

> "That acquittal on a criminal charge is not a bar to a civil action by the Government, *remedial in its nature,* arising out of the same facts on which the criminal proceeding was based has long been settled." (Emphasis added)

In Johnson v. Wall, 329 F.2d 149, 151 (4th Cir. 1964), the Court stated that the *Coffey* doctrine—

> " * * * is limited to those situations where the Government seeks to impose a punishment which, though civil in form, is penal in nature and is based upon the same facts as the criminal proceeding."

Although Coffey has been much maligned, United States v. Burch, 294 F.2d 1, 4–5 (5th Cir. 1961), the case still has vitality within its subsequent restrictions, and we have no authority to overrule it. United States v. One 1956 Ford Fairlane Tudor Sedan, 272 F.2d 704 (10th Cir. 1959).

It would seem that the instant case falls directly within what is left of the *Coffey* doctrine. There has been a final determination of the criminal charges against McKeehan, in that he cannot be prosecuted again on the charge arising out of these same facts, and this determination is equivalent to finding him not guilty.

The subsequent civil proceeding, in the nature of forfeiture, can be characterized only as an action seeking to impose punishment, or a penal sanction, against McKeehan. The forfeiture proceeding is not remedial in any sense, but is quasi-criminal in nature. One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246 (1965).

Failure of appellant to argue an applicable question of law on appeal does not preclude our consideration of it, where it is fairly presented by the record.