**UNITED STATES of America,
Plaintiff,**

v.

**ONE 1971 FORD TRUCK, SERIAL NO. F25HRJ82180, its tools and appurtenances, and $100.00 in U. S. Currency, Defendants,**

v.

**Franklin L. BATES, Claimant.
Civ. No. 72–1126.**

United States District Court,
C. D. California.

Aug. 16, 1972.

**614**

William D. Keller, U. S. Atty., and Larry L. Dier, Asst. U. S. Atty., for plaintiff.

Franklin L. Bates, in pro. per.

## DECISION AND ORDER

HAUK, District Judge.

This action was instituted through the filing of a libel by the United States of America for the forfeiture of a certain 1971 Ford Truck, its tools and appurtenances under the provisions of 49 U.S.C. § 782 [1], and for the forfeiture of $100.00

1. § 782. *Seizure and forfeiture*

Any vessel, vehicle, or aircraft which has been or is being used in violation of any provision of section 781 of this title, or in, upon, or by means of which any violation of said section has taken or is taking place, shall be seized and forfeited: *Provided*, That no vessel, vehicle, or air-

craft used by any person as a common carrier in the transaction of business as such common carrier shall be forfeited under the provisions of this chapter unless it shall appear that (1) in the case of a railway car or engine, the owner, or (2) in the case of any other such vessel, vehicle, or aircraft, the owner or the mas-

in U. S. Currency under the provisions of 26 U.S.C. § 7302.[2] Franklin Lawton Bates filed a claim for the truck, its tools and appurtenances, and appeared *in propria persona*. The Government appeared by its counsel, William D. Keller, United States Attorney and Larry L. Dier, Assistant United States Attorney. No claim was filed for the $100.00 in United States Currency. The parties stipulated to waive pre-trial conference, and the Court trial was held on July 31, 1972.

## FACTS

On February 22, 1972, Special Investigators of the Alcohol, Tobacco and Firearms Division of the United States Treasury Department went to Dude's Bar, 1566 West Fifth Street, Oxnard, California. While there, Special Investigator Erik Roberts met with the owner of the bar and engaged in a conversation concerning the possible purchase of a sawed-off shotgun. Roberts then proceeded into the parking lot of the bar where he was joined by John Franklin Bates, the son of the claimant herein. Bates took Roberts to a 1971 Ford pickup truck, and obtained a weapon from behind the back seat. This firearm was a Western Field, 20 gauge sawed-off shotgun with a barrel length of $9\frac{1}{2}$ inches and an overall length of 21 inches. It contained no serial number and was not registered as required by 26 U.S.C. § 5841[3] and 26 C.F.R. 179.101[4]. After

---

ter of such vessel or the owner or conductor, driver, pilot, or other person in charge of such vehicle or aircraft was at the time of the alleged illegal act a consenting party or privy thereto : *Provided further*, That no vessel, vehicle, or aircraft shall be forfeited under the provisions of this chapter by reason of any act or omission established by the owner thereof to have been committed or omitted by any person other than such owner while such vessel, vehicle, or aircraft was unlawfully in the possession of a person who acquired possession thereof in violation of the criminal laws of the United States, or of any State.

49 U.S.C. § 782 (1958)

2.  § 7302. *Property used in violation of internal revenue laws*

It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property. A search warrant may issue as provided in chapter 205 of title 18 of the United States Code and the Federal Rules of Criminal Procedure for the seizure of such property. Nothing in this section shall in any manner limit or affect any criminal or forfeiture provision of the internal revenue laws, or of any other law. The seizure and forfeiture of any property under the provisions of this section and the disposition of such property subsequent to seizure and forfeiture, or the disposition of the proceeds from the sale of such property, shall be in accordance with existing laws or those hereafter in existence relating to seizures, forfeitures, and disposition of property or proceeds, for violation of the internal revenue laws.

26 U.S.C. § 7302 (1964)

3.  § 5841. *Registration of firearms*

(a) *Central registry.*—The Secretary or his delegate shall maintain a central registry of all firearms in the United States which are not in the possession or under the control of the United States. This registry shall be known as the National Firearms Registration and Transfer Record. The registry shall include—

(1) identification of the firearm ;

(2) date of registration ; and

(3) identification and address of person entitled to possession of the firearm.

(b) *By whom registered.*—Each manufacturer, importer, and maker shall register each firearm he manufactures, imports, or makes. Each firearm transferred shall be registered to the transferee by the transferor.

(c) *How registered.*—Each manufacturer shall notify the Secretary or his delegate of the manufacture of a firearm in such manner as may by regulations be prescribed and such notification shall effect the registration of the firearm required by this section. Each importer, maker, and transferor of a firearm shall, prior to importing, making, or transferring a firearm, obtain authorization in such manner as required by this chapter or regulations issued thereunder to import, make, or transfer the firearm, and such authorization shall effect the registration of the firearm required by this section.

a discussion as to price, Bates sold the weapon to Special Investigator Roberts for $100.00, whereupon Bates was arrested and the 1971 Ford truck and the $100.00 in currency were seized.

Bates was subsequently charged in a two count indictment filed on March 22, 1972 with possession of an unregistered firearm, 26 U.S.C. § 5861(d),[5] and the illegal transfer of a firearm, 26 U.S.C. § 5861(e).[6] On April 27, 1972, Bates was convicted upon his plea of guilty to the offense of wilfully and knowingly possessing a firearm which had not been registered.

Although young Bates was using the 1971 Ford truck at the time of the offense, it has been conclusively proved that his father, Franklin Lawton Bates, the claimant herein, is the true and registered owner of the vehicle. The elder Bates' uncontradicted testimony at the trial also proved that, at the time of the commission of the offense by his son for which this truck has been seized, the father was not present and had absolutely no connection with the crime whatsoever. It was further shown that the claimant-father had neither the knowledge that this offense would be committed by his son nor the suspicion that his truck might be involved in the commission of the crime. In fact, Franklin L. Bates was in Europe at the time of the offense and had been there for several days prior to the commission of the crime. The evidence also estab-

(d) *Firearms registered on effective date of this act.*—A person shown as possessing a firearm by the records maintained by the Secretary or his delegate pursuant to the National Firearms Act in force on the day immediately prior to the effective date of the National Firearms Act of 1968 shall be considered to have registered under this section the firearms in his possession which are disclosed by that record as being in his possession.

(e) *Proof of registration.*—A person possessing a firearm registered as required by this section shall retain proof of registration which shall be made available to the Secretary or his delegate upon request.

Added Pub.L. 90–618. Title II, § 201, Oct. 22, 1968, 82 Stat. 1229.

26 U.S.C. § 5841 (1964)

4. § 179.101 *Registration of firearms.*

(a) The Director shall maintain a central registry of all firearms in the United States which are not in the possession of or under the control of the United States. This registry shall be known as the National Firearms Registration and Transfer Record and shall include:

(1) Identification of the firearm as required by this part;

(2) Date of registration; and

(3) Identification and address of person entitled to possession of the firearm as required by this part.

(b) Each manufacturer, importer, and maker shall register each firearm he manufactures, imports, or makes in the manner prescribed by this part. Each firearm transferred shall be registered to the transferee by the transferor in the man-

ner prescribed by this part. No firearm may be registered by a person unlawfully in possession of the firearm except during an amnesty period established under section 207 of the Gun Control Act of 1968 (82 Stat. 1235).

(c) A person shown as possessing firearms by the records maintained by the Director pursuant to the National Firearms Act (Chapter 53, I.R.C.) in force on October 31, 1968, shall be considered to have registered the firearms in his possession which are disclosed by that record as being in his possession on October 31, 1968.

(d) The National Firearms Registration and Transfer Record shall include firearms registered to the possessors thereof under the provisions of section 207 of the Gun Control Act of 1968.

(e) A person possessing a firearm registered to him shall retain proof of registration which shall be made available to any internal revenue officer upon request.

(f) A firearm not identified as required by this part shall not be registered.

26 C.F.R. 179.101 (1972)

5. § 5861. *Prohibited acts*
It shall be unlawful for any person—
(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record;
26 U.S.C. § 5861(d) (1964)

6. § 5861. *Prohibited acts*
It shall be unlawful for any person—
(e) to transfer a firearm in violation of the provisions of this chapter;
26 U.S.C. § 5861(e) (1964)

lished that young Bates had absolutely no interest whatsoever in the 1971 Ford Truck and, in fact, had been specifically instructed by his father that he was *not* to use the car, except to take his mother to the airport on one occasion. He was further instructed that upon completing this sole task he was to return the truck immediately to the residence of his father and leave it there.

However, on either the 21st or 22nd of February, 1972, John Franklin Bates, without authorization from his father and contrary to his father's express instructions, took the 1971 Ford truck from the residence of his father and converted it to his own use. It was on February 22, 1972, that John Bates was apprehended with the illegal weapon in the 1971 Ford Truck.

## THE LAW

There being no claim filed for the $100.00 in United States Currency, it is undisputed that the funds were used in the unlawful transfer of a contraband firearm upon which neither a transfer application was made, 26 U.S.C. § 5812 [7] nor a transfer tax paid 26 U.S.C. § 5811 [8]. Since the money was transferred in violation of the above internal revenue laws, it is subject to seizure and forfeiture. 26 U.S.C. § 7302; United States v. Amore, 335 F.2d 329 (7th Cir. 1964).

Franklin Lawton Bates, the registered owner of the 1971 Ford Truck has filed a claim for the vehicle, its tools and appurtenances. While it is plain that the truck was used to conceal an unlawful firearm, the claimant's total lack of involvement in the illegal venture raises serious and significant questions in the Court's mind as to the constitutionality as well as the efficacy of the forfeiture proceedings in this instance.

We are fully aware of the supposedly sacrosanct legal principle that personal property may be seized and forfeited even though its owner may be completely innocent of any conduct which can be characterized as criminal or wilfully negligent. Various Items of Personal Property v. United States, 282 U.S. 577, 581, 51 S.Ct. 282, 75 L.Ed. 558 (1931); United States v. One Ford Coupe Auto-

---

7. § 5812. *Transfers*

(a) *Application.*—A firearm shall not be transferred unless (1) the transferor of the firearm has filed with the Secretary or his delegate a written application, in duplicate, for the transfer and registration of the firearm to the transferee on the application form prescribed by the Secretary or his delegate; (2) any tax payable on the transfer is paid as evidenced by the proper stamp affixed to the original application form; (3) the transferee is identified in the application form in such manner as the Secretary or his delegate may by regulations prescribe, except that, if such person is an individual, the identification must include his fingerprints and his photograph; (4) the transferor of the firearm is identified in the application form in such manner as the Secretary or his delegate may by regulations prescribe; (5) the firearm is identified in the application form in such manner as the Secretary or his delegate may by regulations prescribe; and (6) the application form shows that the Secretary or his delegate has approved the transfer and the registration of the firearm to the transferee. Applications shall be denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of law.

(b) *Transfer of possession.*—The transferee of a firearm shall not take possession of the firearm unless the Secretary or his delegate has approved the transfer and registration of the firearm to the transferee as required by subsection (a) of this section.
26 U.S.C. § 5812 (1964)

8. § 5811. *Transfer tax*

(a) *Rate.*—There shall be levied, collected, and paid on firearms transferred a tax at the rate of $200 for each firearm transferred, except, the transfer tax on any firearm classified as any other weapon under section 5845(e) shall be at the rate of $5 for each such firearm transferred.

(b) *By whom paid.*—The tax imposed by subsection (a) of this section shall be paid by the transferor.

(c) *Payment.*—The tax imposed by subsection (a) of this section shall be payable by the appropriate stamps prescribed for payment by the Secretary or his delegate.
26 U.S.C. § 5811 (1964)

mobile, 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279 (1926); Goldsmith Jr.-Grant Co. v. United States, 254 U.S. 505, 41 S.Ct. 189, 65 L.Ed. 376 (1921); Dobbin's Distillery v. United States, 96 U.S. 395, 24 L.Ed. 637 (1871); Palmyra, 25 U.S. (12 Wheat) 1, 6 L.Ed. 531 (1827). This principle has flowered upon the legal fiction that the inanimate objects themselves are guilty of the wrongdoing and therefore it is they that are being punished and not their owners. We note, however, that while formally giving it lip service, courts have consistently criticized both the rule of law itself and the legal fiction upon which it is based.

As far back as 1886, the United States Supreme Court recognized the inadequacy of the fiction upon which forfeiture proceedings were based. In Boyd v. United States, 116 U.S. 616, 634, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886) the Court pointed out that "proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offenses committed by him, though they may be civil in form are in their nature criminal." And more recently, the Court held that "a forfeiture proceeding is quasi-criminal in character. Its object, like a criminal proceeding is to penalize for the commission of an offense against the law." One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 700, 85 S.Ct. 1246, 1250, 14 L.Ed.2d 170 (1965).

The readily apparent injustices of certain forfeiture proceedings have also caused the lower Courts, while faithfully following the precedents and entering judgments of forfeiture, to speak out with rarely seen vehemence declaring their distaste for the effect of forfeiture statutes on innocent claimants. For example, when faced with a forfeiture proceeding similar to the one presently before us, the Court in United States v. One 1962 Ford Thunderbird, 232 F.Supp. 1019, 1022 (N.D.Ill.1964) citing as authority the by now customary yet antiquated precedents, finds the statute constitutional while opining that "as a legislator, we might express grave doubts as to the efficacy of the policy as it affects

innocent lienors . . . " And perhaps the best illustration of the Federal Courts' position on forfeiture statutes and the fiction upon which they are based is the statement of the Honorable Frank W. Wilson of the Eastern District of Tennessee that "[t]he laws relating to forfeitures do cause one who is raised in the traditions of the Anglo-American principles of justice and who is committed to the constitutional principles of due process and just compensation to search closely for a constitutional violation." United States v. One 1961 Cadillac Hardtop Automobile, 207 F.Supp. 693, 698 (E.D.Tenn.1962)

We have searched carefully and although mindful of the many cases to the contrary, we feel compelled to do away with this enclave of injustice which has persisted in spite of the many and varied attacks upon it. In doing so, we do not find fault with our Brothers of the Bench who have found contrarily, since they were not afforded the benefit of recent rulings of both the Supreme Court and the Courts of Appeals which seem to mandate the decision which we make here.

Of greatest import in our decision is the case of United States v. United States Coin and Currency, 401 U.S. 715, 721, 91 S.Ct. 1041, 1045, 28 L.Ed.2d 434 (1971) which, upon viewing the forfeiture statutes in their entirety, held that they "are intended to impose a penalty only upon those who are significantly involved in a criminal enterprise." Thus, laying to rest forever any argument that forfeiture proceedings are not intended to and do not penalize an individual, the Supreme Court went on to state that when dealing with an innocent claimant any forfeiture statute with such a broad sweep raises serious constitutional questions under the commandment of the Fifth Amendment "that no person shall be deprived of . . . property without due process of law; nor shall private property be taken for public use without just compensation." U.S.CONST. amend. V. Considering this constitutional problem the Court refers with approval to Blackstone's condemnation of

"the seizure of the property of the innocent as based upon a 'superstition' inherited from the 'blind' days of feudalism." United States v. United States Coin & Currency, *supra*, 401 U.S. at 720–721, 91 S.Ct. at 1044.

In light of the statements of the Court in United States Coin & Currency, it is exceedingly difficult to reconcile the forfeiture statute under which the instant case is brought with the requirements of the Fifth Amendment. It is clear that in this case the statute is imposing a penalty upon an innocent individual in no way "involved in a criminal enterprise," and is depriving him of his personal property without just compensation. We are further fortified in this decision by the case of McKeehan v. United States, 438 F.2d 739, 745 (6th Cir. 1971) in which the United States Court of Appeals for the Sixth Circuit, without even the support of the teachings of United States Coin & Currency, "destroyed" without compunction the legal fiction that inanimate objects can be guilty of wrongdoing and then went on to find that under the Fifth Amendment "the imposition of forfeiture . . . is penal and causes an unconstitutional deprivation of personal property 'without just compensation'." *Id.* at 745. In our opinion we are presented with an even greater constitutional abuse than that found in *McKeehan* since in the instant case the claimant, completely uninvolved in any unlawful possession of firearms, faces forfeiture of his truck, whereas in *McKeehan* the claimant actually possessed the three *unlawful* machine guns which were the subject of the forfeiture proceedings and which were found by the Court to be taken without just compensation. Surely Mr. Bates is even more of an "innocent" than Mr. McKeehan and therefore, as in *McKeehan*, we must find the forfeiture statute unconstitutional under the Fifth Amendment to the United States Constitution.

■ While it is true that 49 U.S.C. § 782 exempts certain innocent owners from statutory forfeiture of their vehicles, as will be discussed more fully

hereafter, it is still possible under the statute to be innocent of any criminal enterprise yet not "innocent enough" to be exempt from the harsh consequences of forfeiture. Therefore, we find that the imposition of forfeiture under 49 U.S.C. § 782 upon the claimant, regardless of any exemption within which he does fall, would cause him an unconstitutional deprivation of personal property without just compensation.

■ However, the constitutional infirmity of 49 U.S.C. § 782 is not the only grounds upon which the Government's demand for forfeiture must fail. It is well settled that Congress exempted from forfeiture a vehicle used for illegal purposes "while such . . . vehicle . . . was unlawfully in the possession of a person who acquired possession thereof in violation of the criminal laws of the United States, or of any State." 49 U.S.C. § 782; United States v. One 1938 Chevrolet Coach Automobile, 78 F. Supp. 676 (W.D.S.C.1948). In order to fall within this exemption, it is essential that the user of the vehicle not only be in possession of the vehicle unlawfully when it is used for illegal purposes, but also have acquired possession by a criminal act. United States v. One 1951 Oldsmobile Sedan, 135 F. Supp. 873 (E.D.Pa. 1955)

Looking to State law, we find that various California statutes provide as follows:

(a) "Every person who shall feloniously steal, take, carry, lead or *drive away* the personal property of another . . . is guilty of theft" Cal.Penal Code § 484(a) (West 1970) (emphasis supplied) "Grand theft is theft committed in any of the following cases: . . . 3. When the property taken is an automobile . . . ." Cal.Penal Code § 487 (West 1970)

(b) "Any person who drives or takes a vehicle not his own, without the consent of the owner thereof, and with intent either permanently or

temporarily to deprive the owner thereof of his title to or possession of the vehicle, whether with or without intent to steal the same . . . is guilty of a public offense . . . . The consent of the owner of a vehicle to its taking or driving shall not in any case be presumed or implied because of such owner's consent on a previous occasion to the taking or driving of the vehicle by the same or a different person." Cal.Veh.Code § 10851 (West 1970)

(c) "Any person who shall, without the permission of the owner thereof take any automobile . . . or other vehicle . . . for the purpose of temporarily using or operating the same, shall be deemed guilty of a misdemeanor . . .." Cal.Penal Code § 499b (West 1970)

In light of these statutes and the testimony of Franklin L. Bates that he did not authorize or consent to the possession of the truck by his son on February 22, 1972, the Court concludes that John F. Bates was unlawfully in the possession of the 1971 Ford Truck when he used the vehicle to conceal the weapon on February 22, 1972. We also find that in addition to unlawfully possessing the vehicle, John F. Bates acquired its possession in violation of the laws of California. Since the claimant, Franklin L. Bates was in Europe during the events in question, he was unable to testify whether his son followed his instructions to return the truck to the father's residence immediately after taking his mother to the airport on February 21, 1972. He did testify however that his explicit instructions to his son were that he should only use the truck for this limited task and that he should return the truck to the father's residence immediately upon its completion. He also testified that he instructed his son *not* to use the truck at any other time or for any other purpose.

■ In determining whether the son complied with the instructions of his father, we are assisted by one of the fundamental presumptions, in effect rules of law, that govern the fact finder in determining the facts of a given case. This basic presumption is that, until outweighed by evidence in the case to the contrary, the fact finder may find and conclude that private transactions have been fair and regular, that things have happened according to the ordinary habits of life and that the law has been obeyed. *See* 2 E. Devitt and C. Blackmar, Federal Jury Practice and Instructions, § 71.04 (2d ed. 1970) and cases cited thereunder. In the absence of evidence to the contrary on precisely what the boy did with the vehicle on the 21st of February, 1972, when he was instructed to return it to the father's residence after taking his mother to the airport, we necessarily find and conclude that in a fair and regular transaction and according to the ordinary habits of life and in obedience to State law, he did in fact take his mother to the airport and did in fact then return the truck to the father's residence on February 21, 1972.

■■ Having thus found, it follows that the son must have reacquired the truck at some time subsequent to returning it to the house of his father. This reacquisition was not consented to by the father and was therefore illegal. Of course we cannot presume or imply that the father consented to his son's new use or reacquisition of the car on February 22, 1972, merely because he had previously consented to his son's limited use of the truck on the previous day. Cal.Veh. Code § 10851 (West 1970). And California cases have held that one can be guilty of illegal acquisition of an automobile even when the accused is not actually seen taking the car. People v. Lumar, 267 Cal.App.2d 900, 73 Cal.Rptr. 682 (1968); People v. Phelps, 192 Cal.App. 2d 12, 13 Cal.Rptr. 383 (1961). Therefore, since the Government has proved that the truck was in the possession of John F. Bates on February 22, 1972 and the Court has determined upon the uncontradicted testimony of the father that this possession was without his author-

ization or consent, we also conclude that the son's reacquisition of the 1971 Ford Truck after returning it to his father's home was unlawful and obtained in violation of Cal.Penal Code § 487, Cal.Veh. Code § 10851 or Cal.Penal Code § 499b. We need not draw fine distinctions between each of the violations, since it is clear that John L. Bates violated all three sections of the California Codes and the violation of any one of these is sufficient to support our finding and conclusion that he acquired and possessed the truck in violation of "[a] criminal law . . . of any State." 49 U.S.C. § 782, United States v. One 1938 Chevrolet Coach Automobile, 78 F.Supp. 676, 677 (W.D.S.C.1948). We therefore hold that the 1971 Ford Truck is exempt from forfeiture and must be immediately returned to the claimant, Franklin L. Bates.

### ORDER

The foregoing shall constitute Findings of Fact and Conclusions of Law as required by Rule 52 F.R.Civ.P., and in accordance therewith it is hereby ordered that Judgment forthwith be entered as follows:

1. That forfeiture be entered in favor of Plaintiff and against Defendant $100.00 in U. S. Currency, transferring all right, title and interest in and to said currency to Plaintiff.

2. That Plaintiff shall take nothing as against Defendant 1971 Ford Truck, its tools and appurtenances or against claimant Franklin L. Bates; that all right, title and interest in and to said truck, tools and appurtenances shall forthwith and the same is hereby vested in said claimant Franklin L. Bates.

3. That Plaintiff shall forthwith and immediately deliver full and complete possession, custody and control of said truck, tools and appurtenances to said claimant Franklin L. Bates, free and clear of any and all storage and other charges incurred by Plaintiff in connection with Plaintiff's seizure and attempted forfeiture thereof, upon receiving from said claimant his personal surety bond in the sum of $2,800.00, the present value of said truck, tools and appurtenances, to secure to Plaintiff such value in the event Plaintiff shall be successful in reversing this judgment and obtaining forfeiture of said truck, tools and appurtenances in any final judgment on appeal; and that claimant shall have and recover his costs of suit incurred herein.